**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PRAIRIE MANAGEMENT & DEVELOPMENT, INC., *et al.*, | ) ) ) No. 23 CV 53 |
| Plaintiffs, | ) ) |
| v. | ) Magistrate Judge Young B. Kim |
| COLUMBIA MUTUAL INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |
| LIBERTY INSURANCE UNDERWRITERS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| COLUMBIA MUTUAL INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) February 24, 2025 ) |

**MEMORANDUM OPINION and ORDER**

Plaintiffs Prairie Management & Development, Inc. ("Prairie"), Rockwell

Properties, LLC ("Rockwell"), Scottsdale Insurance Company ("Scottsdale"),

Westfield Insurance Company ("Westfield"), and Liberty Insurance Underwriters Inc.

("Liberty") bring two insurance coverage suits alleging that Defendant Columbia

Mutual Insurance Company ("Columbia") has a duty to indemnify them for the

settlement they paid in connection with a personal injury lawsuit Eduardo Guzman

filed after suffering serious injuries at a construction site ("Guzman Lawsuit"). At

the time of his injuries, Guzman was working for TDH Mechanical, Inc. ("TDH"), and Columbia was TDH's insurer.[1]

Before the court is a pair of motions Plaintiffs filed in November 2024 to compel Columbia to produce information it withheld from discovery relating to: (1) the law firm Quinn Johnston's handling of Prairie's and Rockwell's claims for insurance coverage on behalf of Columbia ("Motion No. 1"); and (2) claim notes, Business Owners Premier Endorsement ("AI Endorsement"), claim handing procedures, personnel files, and related lawsuits ("Motion No. 2"). Liberty seeks to join in these two motions, (R. 86, Liberty's Mot. to Join.), which the court allows.[2] For the following reasons, the motions as they pertain to privilege claims are granted as to Document Nos. 0004-6, 0009-12, 0047, 0054-84 (with redactions), and 0094 and denied as to the remaining documents and Motion No. 2 is granted as to Plaintiffs' Second Set[3] of Interrogatory ("S-INT") Nos. 6, 8, and 9 and Second Set of Requests for Production of

---

[1] The court's order of March 18, 2024, includes a more fulsome case history and background. (R. 69, March 18, 2024 Mem. Op. and Order.)

[2] Columbia opposes this joinder motion because it says Liberty never objected to its discovery responses. (See R. 94, Def.'s Consol. Resp. at 6 n.1.) But Liberty replies in support of its motion that it participated in a July 24, 2024 meet-and-confer, as confirmed in an August 5, 2024 letter prepared by Scottsdale's attorney, (see R. 82, Pls.' Mem. in Support of Mot. No. 1 Ex. K), and attested to in a declaration Liberty's attorney signed, (R. 96, Liberty's Reply at 2-3, Ex. A). Based on this information, Liberty's motion to join is granted. Besides, whatever discovery the court orders Columbia to produce will be shared with the other parties.

[3] The court suggests that when a supplemental set of interrogatories (if the first set has fewer than 25 interrogatories) or requests to produce must be served, litigants use sequential numbers to eliminate confusion and the need to reference "first set" and "second set."

Documents ("S-RFP") Nos. 3-5 and 13, granted in part as to S-INT No. 10 and S-RFP Nos. 7-11, and denied as to S-INT Nos. 3, 4, and 7 and S-RFP Nos. 6, 12, and 14:

## Background

Plaintiffs allege that their cases hinge on "[t]wo key issues": (1) whether Columbia "vexatious[ly] and unreasonabl[y]" handled Prairie's and Rockwell's claims for coverage under the AI Endorsement; and (2) why Columbia allegedly paid $500,000 under a general liability policy to settle claims against TDH when TDH "also had a Workers Compensation and Employers Liability Policy through Columbia with a $500,000 limit ('WC/EL Policy')." (R. 82, Pls.' Mem. in Support of Mot. No. 1 at 2.) These issues relate in part to Count III in Plaintiffs' amended complaint, (R. 24, Am. Compl.), which alleges that Columbia "violated the Illinois Insurance Code, 215 ILCS 5/155 ["Section 155"], by denying its duty to indemnify [Plaintiffs] and breaching the policy agreement," (R. 69, March 18, 2024 Mem. Op. and Order at 16). Section 155 "allows a party to recover costs for a 'vexatious and unreasonable delay' in settling a claim." *Cornice & Rose Int'l LLC v. Acuity*, No. 23-1152, 2024 WL 4880102, at *5 (7th Cir. Nov. 25, 2024). But "[a] delay is permissible if a genuine dispute exists over the scope of the coverage." *Id.* (citation omitted). To investigate these and other issues, Plaintiffs served written discovery requests on Columbia, and Columbia served responses to them on May 9, June 18, and July 16, 2024. (R. 82, Pls.' Mem. in Support of Mot. No. 1 Exs. A (Def.'s Resp. to First Set RFPs ("F-RFPs"), B (Def.'s Resp. to First Set INTs ("F-INTs")), D (Def.'s Resp. to S-INTs) & E (Def.'s Resp. to S-RFPs).)

As relevant to Motion No. 1, Plaintiffs' discovery requests sought information regarding:

- "The bases of Columbia's set-off claim, including those who handled and/or supervised the Guzman Lawsuit," (id. at 3, Exs. A (F-RFP No. 10) & B (F-INT Nos. 2-6));

- "Communications between Columbia, TDH, Guzman, Quinn Johnston, and any other entities regarding the insurance coverage under the [contractors businessowners insurance policy ('Columbia CGL Policy')] and/or Columbia WC/EL Policy in connection with the Guzman Lawsuit and/or the Illinois Workers Compensation Commission litigation involving Guzman, THD, and Columbia National Insurance Company . . . ('IWCC Action')," (id. at 3, Exs. A (F-RFP Nos. 4 & 6) & B (F-INT Nos. 7 & 9)); and

- "[T]hose persons on behalf of Columbia who analyzed, opined, reviewed, or considered whether coverage was available under the AI Endorsement in connection with the Guzman Lawsuit," (id. at 4, Exs. D (S-INT No. 5) & E (S-RFP Nos. 2, 13 & 23)).

Plaintiffs complain that Columbia is improperly withholding discovery responsive to these requests based on privilege assertions ("Withheld Documents"). (See id. at 3-4, Exs. A, B, D & E.) More specifically, in Motion No. 1 Plaintiffs identify issues with Columbia's responses to their F-INT Nos. 2-7 and 9, F-RFP Nos. 4, 6, and 10, S-INT No. 5, and S-RFP Nos. 2, 13, and 23. (Id.)

Motion No. 2 challenges Columbia's withholding of documents relating to its claim notes, AI Endorsement, claim handing procedures, personnel files, and related lawsuits. (R. 84, Pls.' Mem. in Support of Mot. No. 2 at 2-4, Exs. A, B.) Columbia objects to producing the discovery Plaintiffs demand on grounds that the Withheld Documents are protected by the attorney-client privilege, the insurer-insured privilege, and/or the work-product doctrine. (R. 94, Def.'s Consol. Resp. at 6-8, 10-24.) Plaintiffs further challenge Columbia's responses to their S-INT Nos. 3, 4, and

6-10 and S-RFP Nos. 3-14, (R. 84, Pls.' Mem. in Support of Mot. at 2-4, Exs. A & B), in which Columbia objects that the information sought is not only protected by various privileges but also is disproportionate to the needs of the case, overly broad in scope, unduly burdensome, and not relevant, (R. 94, Def.'s Consol. Resp. at 6-8, 10-24, Exs. A & B).  Plaintiffs argue that the documents sought therein are relevant to their allegations that Columbia owes them a duty to indemnify (Count I), and that Columbia is liable for damages under Section 155 (Count III).  (R. 100, Pls.' Reply at 14-19; see also R. 84, Pls.' Mem. in Support of Mot. No. 2 at 10-12.)

## Analysis

The court first addresses the motions as they pertain to Columbia's privilege objections and then addresses Motion No. 2 as it pertains to non-privilege-based objections.

### A.    Privilege Objections

Plaintiffs move to compel Columbia to produce information relating to its outside counsel Quinn Johnston's handling of Plaintiffs' claims for insurance coverage under the AI Endorsement.  (See generally R. 82, Pls.' Mem. in Support of Mot. No. 1; R. 84, Pls.' Mem. in Support of Mot. No. 2.)  Columbia objects to producing this information on grounds that it is protected by the attorney-client privilege ("AC privilege"), the insurer-insured privilege ("Insurer privilege"), and/or the work-product doctrine ("WP doctrine").  (R. 82, Pls.' Mem. in Support of Mot. No. 1 Exs. A (F-RFP Nos. 4, 6, 10), B (F-INT Nos. 2-7, 9), D (S-INT No. 5) & E (S-RFP Nos. 2, 13, 23); R. 84, Pls.' Mem. in Support of Mot. No. 2 Exs. A (S-INT Nos. 6-9) & B (S-RFP

5

Nos. 3-13).)  But Columbia's privilege logs, (R. 82, Pls.' Mem. in Support of Mot. No. 1 Exs. C, F; R. 84, Pls.' Mem. in Support of Mot. No. 2 Exs. H, I), do not substantiate all privilege claims asserted.  As such, the court inspected the Withheld Documents *in camera* and finds that while most are protected, some must be produced.

"Ultimately . . . whether a particular document is privileged and thus immune from discovery will depend on the law that controls the decision."  *Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 794 (N.D. Ill. 2015).  Because the cases before the court arise under diversity jurisdiction and Illinois law applies, (R. 69, March 18, 2024 Mem. Op. and Order at 20 n.6), Illinois law governs the AC and Insurer privilege issues, *see* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *Thompson by Willis v. United States*, No. 18 CV 1520, 2020 WL 3962270, at *2 (S.D. Ill. July 13, 2020) ("[T]he law of the State of Illinois applies to evidentiary privileges such as attorney-client [and] insurer-insured.").

Under Illinois law, "[w]here legal advice of any kind is sought from a lawyer in his or her capacity as a lawyer, the communication relating to that purpose, made in confidence by the client, is protected from disclosure by the client or lawyer [under the AC privilege], unless the protection is waived."  *Robert R. McCormick Found. v. Arthur J. Gallagher Risk Mgmt. Servs., Inc.*, 2019 IL 123936, ¶ 19.  Illinois's Insurer privilege extends protection to confidential attorney-client communications where an insurer defends or participates in an insured's defense.  *See Cars R Us Sales & Rentals, Inc. v. Ford Motor Co.,* No. 08 CV 50270, 2009 WL 1703123, at *2 (N.D. Ill.

June 18, 2009) (citing *Pietro v. Marriott Senior Living Servs., Inc.,* 810 N.E.2d 217, 226 (Ill. App. Ct. 2004)).  For the privilege to apply to confidential insurer-insured communications, "the party asserting the privilege must prove: (1) the identity of the insured; (2) the identity of the insurance carrier; (3) the duty to defend the lawsuit; and (4) that the communication was made between the insured and an agent of the insurer." *Id.* (citing *Chi. Trust Co. v. Cook Cnty. Hosp.*, 698 N.E.2d 641, 649 (Ill. App. Ct. 1998)).  However, the Insurer privilege applies only where the attorney acts as a legal adviser, not as "a claims adjuster, claims process supervisor, or claims investigation monitor." *Slaven*, 83 F. Supp. 3d at 794-95.

Federal law governs the WP doctrine and protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative." Fed. R. Civ. P. 26(b)(3)(A).  Notably, "while litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983) (internal quotations and citation omitted).  The WP doctrine protects two types of work: (1) an attorney's thought processes and mental impressions; and (2) an attorney's fact-finding investigation.  *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010); *see also* Fed. R. Civ. P. 26(b)(3)(B) (where WP doctrine applies, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation"); *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) (Rule 26(b)(3)

"establish[es] a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary" (citation omitted)).

As the party withholding responsive documents, Columbia bears the burden of establishing the applicability of a privilege on a document-by-document basis. *See Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 156 (N.D. Ill. 2020). The court construes such assertions narrowly because "evidentiary privileges operate in derogation of the search for the truth and run counter to the public's right to every person's evidence." *Id.* Columbia therefore must produce a privilege log that "identif[ies] for *each* separate document . . . the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013) (emphasis in original) (internal quotations and citations omitted); *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii). Entries must describe the Withheld Documents "in a manner that allows the reader to assess the claim." *Surgery Ctr. at 900 N. Mich. Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 632 (N.D. Ill. 2016).

Here, Plaintiffs argue that Columbia refused to disclose attorney-client and insurer-insured communications involving the Quinn Johnston law firm, as well as Quinn Johnston's documents relating to coverage issues raised in these two cases, without establishing that any privilege applies. (See R. 82, Pls.' Mem. in Support of Mot. No. 1 at 8-14, Exs. C & F; see also R. 84, Pls.' Mem. in Support of Mot. No. 2 at

8

2-4, Exs. H & I.)  In so arguing, Plaintiffs point in part to their S-INT No. 5, in which they asked Columbia to identify "all persons employed, retained, or hired by You who analyzed, opined, reviewed, or considered whether there was coverage available or unavailable under the [AI] Endorsement for [Prairie and Rockwell] in connection with the [Guzman] Lawsuit."  (R. 82, Pls.' Mem. in Support of Mot. No. 1 Ex. D at 5.) Columbia answered by disclosing "Attorneys of Quinn Johnston," as well as its attorney of record.  (Id.)  But Plaintiffs complain that Columbia produced only "pleadings and documents filed" in the underlying Guzman Lawsuit—not Quinn Johnston's relevant claims- or coverage-related business documents that are not privileged.  (R. 100, Pls.' Reply to Mot. No. 1 at 10.)

Columbia disagrees with Plaintiffs' characterization of the Withheld Documents, asserting that "the attorneys with Quinn Johnston provided legal assessments of [Columbia's] purported duty to indemnify Plaintiffs Prairie and Rockwell."  (R. 94, Def.'s Consol. Resp. at 25.)  Columbia invites the court to inspect the subject Quinn Johnston documents *in camera* to confirm they are protected by the AC or Insurer privilege.  (Id. at 8, 25.)  Columbia also argues that the WP doctrine applies, since litigation between the parties over coverage matters not only was anticipated but had already begun as early as 2019.  (Id.)

Plaintiffs challenge the bases Columbia offers to support its claims that the Withheld Documents are privileged in their entirety.  *Slaven*, 83 F. Supp. at 797. This is particularly true with respect to documents relating to coverage for Prairie and Rockwell under the AI Endorsement.  Plaintiffs say Columbia bears the burden

of establishing an evidentiary privilege, yet its privilege logs include entries describing information exchanged between attorneys/litigation staff, claims managers/specialists, compensation claims managers/specialists, "[e]mployee[s]," and the owner of TDH. (See R. 82, Pls.' Mem. in Support of Mot. No. 1 at 4, Exs. C & F; R. 84, Pls.' Mem. in Support of Mot. No. 2 Exs. H & I.) And Plaintiffs point out that the logs include documents described as relating to claim settlements, claim files, claim valuations, duties to indemnify, and compensation claims. (Id.) Given the general nature of these entries, which at least in some instances appear to relate to ordinary business records rather than privileged materials, it is impossible for Plaintiffs to assess the validity of the privilege assertions. *See Surgery Ctr.*, 317 F.R.D. at 632.

Moreover, Columbia's continued denial as to Prairie's and Rockwell's entitlement to indemnification, (R. 79, Amend. Answer ¶ 71), raises concerns about its reliance on the Insurer privilege given that such privilege hinges on Columbia's participation in the insured's defense, *see Cars R Us,* 2009 WL 1703123, at *3.[4] And insofar as Quinn Johnston's work product relates to Prairie's and Rockwell's claims for insurance coverage, the primary purpose behind that work may relate to ordinary claims investigations and coverage determinations—not to mental impressions formed in anticipation of litigation. *See Binks Mfg. Co.*, 709 F.2d at 1119.

---

[4] Plaintiffs suggest that Columbia "intimates an advice of counsel defense," which they say "would necessarily waive the attorney-client privilege." (R. 82, Pls.' Mem. in Support of Mot. No. 1 at 10-11.) However, Columbia responds that it has not raised an advice-of-counsel defense in this action. (R. 94, Def.'s Consol. Resp. at 8, 26-27.) As such, Plaintiffs have not sufficiently developed a waiver argument.

Based on a review of the briefing and privilege logs alone, the court cannot be assured that Columbia has carried its burden of showing that each Withheld Document is protected. Notably, no Quinn Johnston attorney (or attorney of record for Columbia) submitted a declaration to the court attesting that the individuals identified in the privilege logs were acting in an attorney capacity, rather than as insurance claims adjusters, or that the documents listed in those logs qualify as confidential attorney-client or insurer-insured communications, rather than as ordinary business records. Columbia instead relies upon "an unsubstantiated allegation" that a privilege applies, which does not constitute the type of competent evidence needed to show that the documents are properly withheld. *Slaven*, 83 F. Supp. 3d at 796 ("Blanket claims of privilege or conclusory assertions are insufficient to carry this burden."). As such, the court is left to wrestle with whether the Withheld Documents are subject to an applicable privilege or immunity or simply pertain to "business functions inherent in all claims determinations." *Slaven*, 83 F. Supp. 3d at 797.

In short, Columbia has not satisfied its burden under Rule 26(b)(5)(A)(ii) to show that each Withheld Document on the supplemental privilege log—at least to the extent the entries relate to claims or coverage matters—is in fact privileged. Nevertheless, "privilege determinations ought not to be made without the judge first reviewing the questioned documents *in camera*." *Slaven*, 83 F. Supp. 3d at 801. Indeed, the Seventh Circuit has admonished that "[o]nly when the district court has been exposed to the contested documents and the specific facts which support a

11

finding of privilege under the attorney-client relationship for each document can it make a principled determination as to whether the attorney-client privilege in fact applies." *Am. Nat'l Bank & Tr. Co. of Chi. v. Equitable Life Assur. Soc'y of U.S.*, 406 F.3d 867, 880 n.7 (7th Cir. 2005). The court thus ordered Columbia to submit the documents listed in its privilege log for *in camera* inspection. (R. 106; R. 107; see also R. 82, Pls.' Mem. in Support of Mot. No. 1 Exs. C & F; R. 84, Pls.' Mem. in Support of Mot. No. 2 Exs. H & I.) On February 6, 2025, Columbia submitted more than 100 pages of Withheld Documents for the court's inspection, along with a supplemental privilege log describing these documents.[5]

Having reviewed the supplemental privilege log and documents submitted with the above principles in mind, the court finds that many of the documents listed are protected from disclosure by the AC or Insurer privilege or the WP doctrine, but the following Withheld Documents must be produced for the reasons described below:

---

[5] Columbia did not submit the supplemental privilege log with its response to the motions. (See generally R. 94, Def.'s Consol. Resp.) Nevertheless, the court allows the log because Columbia represents that "[i]n the interest of judicial economy, Defendant combined the two previously disclosed privilege logs" into one supplemental privilege log. (Def.'s Supp. Priv. Log at 2.) Because the court relied on this log and because it is not part of the record, Columbia must file the supplemental privilege log on the docket by February 28, 2025.

| Page No. | Date | Author[6] | Recipient | Description | Privilege Claims |
|---|---|---|---|---|---|
| 0004-6 | 04/25/22 04/26/22 05/05/22 05/09/22 | McCoy Lentz VanRheeden | Lentz McCoy | "Regarding settlement agreement with Guzman and [his spouse] Karla Avina." | Insurer AC |
| 0009-10 | 04/05/22 | McCoy | Lentz | "Regarding information about Guzman and Avina's claim." | Insurer |
| 0011-12 | 04/05/22 | Lentz | Diamond | "Columbia discussing UL[7] with NAMIC Insurance." | Insurer |
| 0047 | 11/14/17 | Bach | Lee | "Regarding liability reserves" | WP |
| 0054-75 | | | | "CIG Internal Claims Log reflecting internal insurer communication detailing all aspects of the insurance process throughout the underlying claim and UL – mental impressions of counsel and in- | AC |

---

[6] According to Columbia's supplemental privilege log, James VanRheeden and Jo Wetherill are attorneys representing Columbia and TDH, Ray Lentz is Columbia's litigation analyst, Zach McCoy is NAMIC Insurance Company, Inc.'s ("NAMIC") litigation examiner, and Dale Diamond is a NAMIC employee. Jennifer Kerker's affiliation and position are not identified in the supplemental privilege log, but Page No. 0094 notes that she is a legal assistant to VanRheeden. And Andrew Bach is Columbia's litigation analyst and Cyndy Lee is one of its employees.

[7] Columbia does not explain the meaning of "UL."

| | | | | | |
|---|---|---|---|---|---|
| | | | | house insurer counsel" | |
| 0076-84 | | | | "CIG – Internal Claims Log reflecting internal insurer communication detailing all aspects of the insurance process throughout the underlying claim and UL – mental impressions of counsel and in-house insurer counsel" | Insurer & AC |
| 0094 | 03/14/22 | Kerker VanRheeden | VanRheeden Wetherill | "Regarding Liberty's demand for indemnity" | AC |

### 1.     Page Nos. 0004-6, 0009-12 & 0094

Page Nos. 0004-6 and 0094 do not reflect any request for legal advice and instead are merely communications including facts or attaching nonprivileged records.  Accordingly, these emails are not protected by the AC or Insurer privilege. The Insurer privilege also does not apply to Page Nos. 0009-12.  Columbia makes no effort to describe its relationship with NAMIC, explain whether NAMIC was communicating with Columbia in connection with a duty to defend, and so on. Although the court presumes that NAMIC is Columbia's reinsurer, it is Columbia's obligation to establish each element of the claimed privilege.  Regardless, the emails in Page Nos. 0009-10 appear to reflect Columbia's potential submission of a claim to its reinsurer.  And in Page Nos. 0011-12, the emails share additional information

14

relating to a claim Columbia submitted. No AC privilege is asserted, and Columbia has not shown that Lentz, its "litigation analyst," or McCoy and Diamond, NAMIC's "litigation examiner" and "employee," respectively, were acting in a legal capacity. *See Slaven*, 83 F. Supp. 3d at 794-95 (explaining that Insurer privilege extends only to rendering of legal advice, not to claim investigations and coverage determinations).

### 2. Page No. 0047

Columbia asserts the WP doctrine here without explaining how the information reflected in this document was formulated in anticipation of litigation. In its response, Columbia argues that the WP doctrine applies to documents dating back to 2019 because litigation between the parties over coverage matters was anticipated and had already begun by that time. (R. 94, Def.'s Consol. Resp. at 3, 28.) But Columbia generated Page No. 0047 in November 2017. Without any evidence, let alone argument, suggesting that this email was sent in anticipation of litigation, rather than as part of claims investigation and coverage matters, it does not qualify for protection under the WP doctrine.

### 3. Page Nos. 0054-84

These pages are not protected in their entirety from disclosure based on the AC privilege. As such, while Columbia may redact the specific portions of those documents discussing attorney-client communications, it must produce the remainder without redaction. As the document descriptions make clear, these Withheld Documents are part of the internal claims log and some merely narrate work performed on the claim file, without reflecting a request for or the rendering of

15

legal advice. Thus, to the extent portions of the log do not reflect the provision of legal advice, they may not be withheld.[8] *See Smith v. Bd. of Educ. of City of Chi.*, No. 17 CV 7034, 2019 WL 2525890, at \*3 (N.D. Ill. June 19, 2019). Accordingly, Columbia may redact the following entries from Page Nos. 0054-78:

| Page No. | Redactions Permitted Pursuant to AC Privilege |
|---|---|
| 0054 | Entries marked: 4/25/2022 1:58:48 PM; and 4/25/2022 9:16:06 AM. |
| 0055 | Entries marked: 4/19/2022 3:44:01 PM; and 4/14/2022 12:39:05 PM. |
| 0056 | Entries marked: 4/01/2022 9:49:42 AM; and 4/01/2022 9:29:11 AM. |
| 0057 | Entries marked: 8/14/2017; 9/12/2017; and 9/18/2017. |
| 0058 | Entries marked: 10/18/2017; and 12/18/2017. |
| 0059 | Entries marked: 4/23/18; 5/11/18; 5/14/18; and 6/1/18. |
| 0059 | Portion of the entry marked: 6/4/18 – beginning "I advise JD . . ." through the remainder of the entry. |
| 0060 | Entries marked: 9/24/18; 11/5/18; 12/18/18; 2/21/19; and 4/4/19. |
| 0061 | Entries marked: 5/2/19; 5/10/19; 5/13/19; 6/6/19; and 7/22/19. |
| 0063 | Entries marked: 8/21/19; 8/27/19; 8/29/19; 9/13/19; and 9/26/19. |
| 0064 | Entries marked: 10/11/19; 10/23/19; 11/13/19; 1/6/19; 1/13/20; and 1/28/20. |
| 0065 | Entries marked: 2/6/20; 4/10/20; and 6/2/20. |
| 0068 | Entries marked: 8/14/20; and 9/11/20. |
| 0069 | Entries marked: 9/11/20; 9/28/20; 9/29/20; 10/12/20; and 10/21/20. |
| 0071 | Entries marked: 11/5/20; 11/10/20; and 12/29/20. |
| 0073 | Entries marked: 12/30/20; 12/31/20; and 1/6/21. |
| 0074 | Entries marked: 1/8/21; 1/12/21; and 2/22/21. |
| 0076 | Entries marked: 5/23/2023 1:45:31 PM; 5/23/2023 1:15:26 PM; 5/17/2023 9:27:40 AM; 5/16/2023 3:29:40 PM; and 5/16/2023 8:37:12 AM. |
| 0077 | Entries marked: 5/9/2023 12:20:36 PM; 5/2/2023 1:10:35 PM; 3/22/2023 8:21:39 AM; 1/31/2023 3:13:11 PM; and 1/27/2023 10:26:11 AM. |
| 0078 | Entries marked: 1/24/2023 8:40:24 AM; 12/27/2022 12:56:32 PM; and 10/5/2022 2:27:19 PM. |

---

[8] For Page Nos. 0076-84, Columbia asserts that the Insurer privilege attaches in addition to the AC privilege. The court did not find any instances in which the Insurer privilege attached, and the AC privilege did not. As such, the court limits its analysis here to the application of the AC privilege.

### B.     Non-Privilege Objections

The court grants Motion No. 2 as to Plaintiffs' S-INT Nos. 6, 8, and 9 and S-RFP Nos. 3-5 and 13, grants in part and denies in part the motion as to S-INT No. 10 and S-RFP Nos. 7-11, and denies the motion as to S-INT Nos. 3, 4, and 7 and S-RFP Nos. 6, 12, and 14 as explained below.  (See R. 84, Pls.' Mem. in Support of Mot. No. 2 at 2-4, Exs. A & B.)

### 1.     Interrogatories

| No. | Rulings |
|---|---|
| 3 & 4 | The motion is denied, and Columbia's relevance and scope objections are sustained.  Plaintiffs fail to show—especially in light of the relevant inquiry the fact finder must be engaged in pursuant to the court's ruling issued in March 2024—the relevance of the names of "all persons who were involved in the drafting, development, or review of the" AI Endorsement and "all persons" who "communicated about the intent, interpretation, or application" of the AI Endorsement. |
| 6 | The motion is granted, and Columbia's objections are overruled.  Plaintiffs show that documents related to their claims for coverage under the AI Endorsement, or claim handling procedures related to the same, are relevant at least to Count III of their amended complaint, (R. 24, Amend. Compl.), which alleges that Columbia violated Section 155 when denying its duty to indemnify Plaintiffs.  What Columbia knew when and how it applied the AI Endorsement in other situations may be relevant to the issue of whether Columbia acted in bad faith when denying Plaintiffs' claim for indemnification in these cases.  The court also finds the temporal scope, January 1, 2014, to April 22, 2022, to be reasonable given that the subject Columbia CGL policy issued to TDH covered the period from April 12, 2016, to April 12, 2017, and the Guzman Lawsuit settled on April 22, 2022.  As such, Columbia is ordered to identify the relevant individuals responsive to S-INT No. 6 for the period specified. |
| 7 | The motion is denied considering this court's ruling herein requiring Columbia to produce documents responsive to S-RFP Nos. 7-10. |
| 8 & 9 | The motion is granted, and Columbia's objections are overruled for the reasons stated in response to S-INT No. 6.  But as for S-INT Nos. 8(e) and 9(d), Columbia is not required to identify the |

17

| | |
|---|---|
| | responsive documents given the court's rulings on S-RFP Nos. 3 and 4. |
| 10 | The motion is granted in part, and Columbia's scope objection is sustained in part. This S-INT exceeds the scope of information relevant to the parties' claims or defenses and is not proportional to the needs of the cases. However, the court finds that other Section 155 actions against Columbia may be relevant to Count III. As such, Columbia is ordered to respond to this S-INT with other Section 155 actions pertaining to the application of the subject AI Endorsement for the period specified. |

**2.    Requests for Production**

| No. | Rulings |
|---|---|
| 3-5 | The motion is granted for the reasons already stated in connection with S-INT Nos. 8 and 9. As for S-RFP Nos. 4 and 5, Columbia is only required to produce sufficient documents reflecting the information Plaintiffs seek in S-INT Nos. 8(a)-8(d) for the period specified in S-INT No. 8, not S-RFP Nos. 3-5 for the sake of consistency. |
| 6 | The motion is denied, and Columbia's relevance objection is sustained. |
| 7-10 | The motion is granted in part and Columbia's scope objection is sustained in part. Plaintiffs have shown that documents reflecting information on how their claims for coverage under the AI Endorsement should have been handled are relevant and proportional to the needs of their cases. But the scope of these S-RFPs is overly broad to the extent they seek "all related documents" pertaining to coverage under the AI Endorsement for an unlimited period. Columbia is ordered to produce sufficient documents reflecting how Plaintiffs' claims under the AI Endorsement should have been processed. |
| 11 | The motion is granted in part, and Columbia's scope objection is sustained in part. For the reasons stated in response to S-INT No. 10, Columbia is ordered to produce the charging documents for the actions identified in Columbia's answer to S-INT No. 10. |
| 12 | The motion is denied. Columbia's relevance objection is sustained. |
| 13 | The motion is granted, and Columbia's objections are overruled. This S-RFP seeks claims-related documents pertaining to coverage for Prairie and Rockwell under the AI Endorsement. The court does not find this S-RFP to be "vague" or "ambiguous" in that it presumes that as soon as Prairie and Rockwell submitted their claims for |

18

| | |
|---|---|
| | coverage, Columbia created and maintained a file on the claims, which would necessarily include business records. An RFP is not improper or objectionable simply because it seeks privileged documents. If some of the responsive records are privileged, then Columbia is entitled to withhold such documents and produce a privilege log. |
| 14 | The motion is denied, and Columbia's relevance objection is sustained. |

## Conclusion

For the foregoing reasons, Plaintiffs' motions relating to privilege claims are granted as to Document Nos. 0004-6, 0009-12, 0047, 0054-84 (with redactions), and 0094, and denied as to the remaining documents and Motion No. 2 is granted as to Plaintiffs' S-INT Nos. 6, 8, and 9 and S-RFP Nos. 3-5 and 13, granted in part as to S-INT No. 10 and S-RFP Nos. 7-11, and denied as to S-INT Nos. 3, 4, and 7 and S-RFP Nos. 6, 12, and 14.

ENTER:

_____

**Young B. Kim**
**United States Magistrate Judge**

19